UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LEROY BERRY,

    Plaintiff,                                      CASE NO.: 6:15-CV-145-CEM-GJK

v.

JAMIE McGOWAN, JACK PARKER,
SHERIFF OF BREVARD COUNTY,
FLORIDA, and THE BOARD OF COUNTY
COMMISSIONERS OF BREVARD COUNTY,
FLORIDA,

    Defendants.
_____/

**AMENDED COMPLAINT**

Leroy Berry, Plaintiff, sues the Defendants, Jamie McGowan, Jack Parker, Sheriff of Brevard County, Florida, and the Board of County Commissioners of Brevard County, Florida, by his undersigned attorney, and alleges:

**JURISDICTION**

1. This is an action by the Plaintiff, LeRoy Berry, against the Defendants, Jamie McGowan, Jack Parker, Sheriff of Brevard County, Florida and the Board of County Commissioners of Brevard County, Florida, for damages exceeding Fifteen Thousand ($15,000.00) Dollars for assault and battery, false arrest and for violation of the Plaintiff's constitutional rights on December 22, 2010 in Brevard County, Florida.

2. The Plaintiff timely served Jack Parker, Sheriff of Brevard County, Florida and Mr. Howard Tipton, County Manager of Brevard County, Florida, and the Florida Department of Financial Services notices of his claims in this action by certified mail on October 7, 2013, pursuant to Section 768.28(6)(a) Florida Statutes.  The Defendant did not respond to said

notices.   (Exhibits A & B)

3. Defendant, Jack Parker, was at all times referred to herein serving as the duly elected Sheriff of Brevard County, Florida, pursuant to Section 30.07 Fla. Stat.  The Defendant, Brevard County, provides the financial funding for the Sheriff's Department.

4. Defendant Jack Parker is responsible for the conduct of the deputies which he appointed to act on his behalf, including all those actions referred to herein by Defendant, Jamie McGowan against the Plaintiff described herein.

5. At approximately 3:00 p.m. on December 22, 2010 Berry came upon his teenage cousin who appeared to him be in a dispute with a couple of females on Gray Lane in the area of Kennedy Street in Mims, Brevard County, Florida.

6. Berry got out of his vehicle and he was verbally and physically restraining his cousin so that no altercation could occur between her and the females who were taunting her.

7. Defendant McGowan drove up to Gray Lane and Kennedy while the Plaintiff was maintaining order in this apparent dispute.

8. Defendant McGowan went up to Berry while ignoring the fact Berry was trying to maintain order and civility and, for no apparent reason, McGowan physically grabbed Berry's cousin from Berry's grasp and pulled her away from Berry.

9. McGowan knew, or he reasonably should have known as any reasonably prudent person would have known under the facts that existed at that time, that Berry was holding his cousin with his hands in order to prevent an altercation.

10. Without saying anything to Berry, McGowan physically pulled Berry's cousin away from Berry's grasp.

2

11. Berry told McGowan it was not necessary for him to violently grab (his cousin) and forcefully pull her away from him as he had done because he had his cousin under his control.

12. McGowan released his grasp of Berry's cousin and he grabbed Berry with unnecessary and unreasonably violent force.

13. McGowan violently put handcuffs on Berry's wrists behind his back and shoved Berry into a squad car without telling him he was under arrest or what law he had violated to justify such violent treatment.

14. McGowan shoved Berry into a squad car and he called Berry "son of a bastard" for no apparent reason.

15. Berry told McGowan that he had not committed any crime and that he did not have authority to arrest him. McGowan refused to tell Berry what crime he claimed Berry had committed when he asked him after he had confined him in the squad car.

16. McGowan falsely charged Berry with committing the crime of battery on a "fireman" although he had no evidence whatsoever that would cause any reasonable law enforcement officer to believe there was probable cause to believe Berry had committed a battery on anyone and, particularly not upon a "firemen," at the time he arrested Berry on said charge.

17. Under the facts which were before McGowan no reasonable law enforcement officer would have believed Berry committed the crime of battery on a "fireman" pursuant to §784.07(2b), Fla. Stat. nor was there evidence to cause a reasonable law enforcement officer to believe Berry committed a battery on a law enforcement officer prior to or at the time McGowan physically seized Berry, put him in his squad car and confined him in the Volusia County jail upon a charge of battery on a fireman.

18. McGowan knew he had no facts to support his claim that Berry had committed the necessary elements of the crime of battery on a fireman to give him lawful authority to arrest him for violating said statute.

19. McGowan unlawfully confined Berry in the Brevard County jail when he did not have probable cause to believe he had committed the crime of battery on a "fireman" in violation of his constitutional rights to due process of law.

20. In order to obtain his release from jail Berry was required to post a $5,000.00 bond.

21. Berry had to defend himself of said charges in a jury trial on March 30, 2011.

22. A Brevard County jury returned a verdict finding Berry not guilty of the charge which McGowan had filed against Berry.

23. A judgment of acquittal of Berry was entered by the criminal court judge on March 30, 2011 following a jury finding Berry not guilty.

## COUNT I

### PLAINTIFF'S CLAIM AGAINST DEFENDANT McGOWAN FOR VIOLATION OF HIS CONSTITUTIONAL RIGHTS UNDER AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES

24. Berry re-alleges and incorporates herein paragraphs 1 - 23 above as if stated in this Count.

25. The Plaintiff is a black American of African descent.   McGowan is a Caucasian.

26. McGowan knew or he reasonably should have known he did not have evidence which would cause a reasonable law enforcement officer to believe Berry had committed the elements of §784.07(2b), Fla. Stat., battery on a "fireman," nevertheless, he unlawfully arrested Berry and he unlawfully charged Berry with committing this crime although he knew or he

4

reasonably should have known he did not have arguable probable cause to believe Berry committed said crime.

27. McGowan deliberately, maliciously, recklessly and physically seized and arrested Berry without lawful authority to do so and he put handcuffs on Berry, put Berry in a squad car, recklessly accused Berry of committing a crime he knew or he reasonably should have known he did not have probable cause to believe Berry had committed, and he falsely arrested Berry and he put Berry in jail, and he caused Berry to be prosecuted for the crime of battery on a fireman when any reasonable law enforcement officer would have known under the facts and circumstances which existed to the time he seized Berry that he did not have any evidence that Berry committed the crime of battery on a fireman on December 22, 2010.

28. McGowan deprived Berry of his well-settled and well-established constitutional rights to freedom of speech and due process of law protected under the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, when he seized Berry, an African American man, handcuffed him, confined him in a squad car and put Berry in jail when he knew Berry had not committed the necessary elements of the crime he falsely accused Berry of committing and he did so as an act of prejudice against the Plaintiff because he was of the Negro race.

29. McGowan's vicious attack on Berry in violently handcuffing him and violently shoving him into a squad car caused Berry mental anguish, emotional distress, physical pain and mental distress as he humiliated and embarrassed Berry in the presence of friends and family.

30. McGowan unlawfully deprived Berry of his personal dignity and his protected constitutional right to free speech and he denied Berry his freedom and his protected rights under

5

the aforementioned Amendments to the Constitution of the United States as he discriminated against Berry because of his race and he detained and arrested Berry when no reasonable law enforcement officer would have believed he had probable cause to believe Berry had committed a crime.

31. McGowan's aforementioned conduct caused Berry to sustain pain, fear of serious injuries, humiliation and embarrassment and caused him to incur medical and legal expenses and caused him to lose income from his employment and caused him to have to pay for a bond in order to obtain his release from jail on the aforementioned false charges.

32. McGowan knew, as any reasonable law enforcement officer would have known under similar facts, that he did not have sufficient evidence to arrest Berry on said charges before he arrested him and caused him to be confined in jail on a false charge.

33. Berry is entitled to recover from McGowan all damages which he has incurred because of McGowan's aforementioned egregious conduct, including his attorney fees, expert witness fees and the expenses which he has incurred and which he will incur in order to vindicate his constitutional rights pursuant to 42 U.S.C. §1983, and §1988 in this litigation.

Wherefore, Berry demands judgment against McGowan for all damages referred to above, including his attorney's fees, expert witness fees, and all costs he has incurred and will incur in this action and he is entitled to an award of punitive damages pursuant to federal law.

## COUNT II

### BERRY'S CLAIM AGAINST MCGOWAN FOR ASSAULT

34. Paragraphs 1 - 33 above are incorporated herein.

35. As a direct and proximate result of McGowan's aforementioned unreasonably

hostile, intentionally abusive behavior, and threatening treatment of Berry without lawful authority to do so, McGowan committed an intentional assault on Berry under his false claim that Berry had committed a crime when he knew that Berry had not committed any crime.

36. McGowan's aforementioned conduct caused Berry to believe McGowan would inflict pain and physical injuries on him and deprive him of his freedom without lawful authority to do so and McGowan did, in fact, do so.

37. It was evident to Berry before McGowan attacked him that McGowan possessed the physical strength and the equipment which would cause Berry to experience fear, apprehension, mental distress and that McGowan would physically assault him and cause him pain.

Wherefore, Berry demands judgment against McGowan for all damages which McGowan caused him to sustain described above, including punitive damages.

## COUNT III

**BERRY'S CLAIM AGAINST DEFENDANT MCGOWAN FOR BATTERY**

38. Paragraphs 1 - 37 above are incorporated in this count by reference.

39. McGowan knowingly, intentionally, violently, ferociously, maliciously and purposefully committed a physical attack on Berry, as described above, for the express purpose and intention of inflicting pain, emotional distress and anxiety upon Berry when he knew, as any reasonable law enforcement officer would have known under similar facts, that Berry had not committed any crime for which he had lawful authority to arrest Berry and he knew that Berry had not physically resisted him or that Berry had physically attacked him so as to give McGowan any lawful authority whatsoever to justify his physical assault on Berry, violently causing Berry

pain and unlawfully arresting him, and confining him in jail and charging him with the crime of battery on a fireman when he knew that Berry did not commit said crime.

40. McGowan's aforementioned conduct towards Berry constituted the intentional tort of battery on Berry.

41. As a direct and proximate result of McGowan's aforementioned battery on Berry, McGowan caused Berry to experience pain, fear, anxiety and emotional distress as he physically struck Berry and as he physically seized Berry, and as he unlawfully put handcuffs very tightly on Berry's wrists, and as he used unnecessary and unreasonable force on Berry when he seized Berry and when he forcefully thrust Berry into a squad car in an unreasonably rough manner even though he knew, as any reasonable law enforcement officer would have known under the facts available to him at that time, that he did not have probable cause to believe Berry had committed the necessary elements of any crime which would give him lawful authority to seize, confine, arrest and put Berry in jail as he did and, particularly, since he knew the physical contact he had with Berry was, in fact, initiated by himself and was due to his own assault and battery on Berry.

Wherefore, Berry demands judgment against McGowan for all damages to which he is entitled under the law as a result of McGowan's aforementioned intentional battery on him and Berry demands punitive damages when the court permits a claim for said damages.

## COUNT IV

### BERRY'S CLAIM AGAINST MCGOWAN FOR FALSE ARREST

42. Berry re-alleges and incorporates herein paragraphs 1 - 41 above, as if fully set forth herein.

43. McGowan knew, as any reasonable law enforcement officer would have known under the facts that existed at the time he seized Berry, that he had no facts which would cause a reasonable law enforcement officer to believe there was probable cause to arrest Berry for the charge of battery on a fireman; nevertheless, McGowan falsely arrested Berry and falsely charged Berry with committing the crime of battery on a fireman when he had no evidence to support said charge.

44. McGowan's aforementioned actions of falsely arresting and falsely charging Berry and causing him to be prosecuted for a crime which McGowan knew Berry had not committed was a malicious abuse of McGowan's power and authority as a deputy sheriff and an abuse of McGowan's authority as a law enforcement officer and a deputy of Sheriff Parker under the law.

Wherefore, Berry demands judgment against McGowan for all damages to which he is entitled under the law, including punitive damages.

## COUNT V

### BERRY'S CLAIM AGAINST PARKER FOR THE UNLAWFUL CONDUCT OF HIS DEPUTY

45. Berry re-alleges and incorporates herein paragraphs 1 - 44 above as if fully set forth herein.

46. As Sheriff of Brevard County at all times referred to above, Parker had a duty to provide all deputies he appointed to serve on his behalf, including McGowan, adequate and sufficient training and supervision so that his deputies would know the law and so they would know the limits the law placed on their power and authority and so they would know the constitutional rights of citizens so they would not violate the constitutional rights of citizens

while they were acting as Parker's deputies.

47. Parker was responsible for selecting persons who possessed the intelligence and temperament and the personal restraint to follow his rules, the law and respect the constitutional rights of all citizens and Parker had a duty and a responsibility to train, monitor and supervise all those people he selected to serve as his deputies, including McGowan, so they would know there were limitations on their authority as his deputies and so they would not abuse citizens and violate citizen's constitutional rights as described above.

48. The aforementioned actions of McGowan demonstrate the fact that Parker either did not investigate McGowan's background and sufficiently judge his propensity to discriminate against black citizens and follow the law before arresting any citizen, or he failed to provide McGowan with adequate and sufficient training and supervision and his failure to train McGowan is evident by the fact that McGowan's aforementioned conduct towards Berry, an African American, demonstrates he did not know or he did not realize he had a personal responsibility to determine whether he had sufficient evidence and sufficient facts to give him probable cause to believe a citizen had committed each element of the crime which he intended to charge a citizen with committing before he physically seized and arrested a citizen, including African American men and, as stated above, as it is clear from the facts that he did not have probable cause to believe Berry committed said crime when he arrested Berry for battery on a fireman as described above.

49. Parker also had a duty and a responsibility as Sheriff of Brevard County to respect and to protect the constitutional rights of all citizens by providing supervision of those he appointed to serve as his deputies, including McGowan, and he had a responsibility to discipline

his deputies who failed to follow his policies so they would clearly know and so they would clearly understand and appreciate the fact that they did not have the power and the authority to violate the constitutional rights of citizens, including African American men, by arresting them when they did not have evidence they had violated a law, and it is evident by the conduct of McGowan described herein that he unlawfully arrested Berry when he knew he had no evidence that would give him probable cause to believe Berry had committed the crime of battery on a fireman.

50. Berry failed to provide McGowan and his appointed deputies a clear policy as to what the consequences would be if a deputy violated a citizen's constitutional rights while he was acting as an appointed deputy of Sheriff Parker as he violated Berry's constitutional rights to due process of law on the aforementioned occasion.

51. Parker negligently failed to monitor McGowan's conduct and Parker negligently failed to supervise McGowan's conduct while he was acting as Parker's deputy which resulted in McGowan believing that he had the power and the authority to arrest Berry even though McGowan knew or he reasonably should have known, as any reasonable law enforcement officer would have known under similar circumstances, he did not have probable cause to believe Berry had committed the necessary elements of the crime of battery on a fireman he charged Berry with committing.

52. Parker did not discipline McGowan and he negligently and irresponsibly failed to terminate McGowan as his deputy for the role he played as his deputy when McGowan violated Berry's constitutional rights as described above.

53. Even after Parker was informed of McGowan's aforementioned violation of

11

Berry's constitutional rights, neither Parker nor his staff found McGowan's aforementioned conduct towards Berry was improper or impermissible and, in fact, Parker ratified, affirmed, and approved McGowan's aforementioned unlawful actions toward Berry by continuing McGowan as his deputy without any discipline for his aforementioned unconstitutional violation of Berry's constitutional rights.

54. As a consequence of Parker's aforementioned failing to establish policies and standards for his deputies which resulted in his deputies violating Berry's constitutional rights and in Parker's failing to provide adequate training of the deputies whom he appointed to act on his behalf, including McGowan, and in Parker failing to discipline McGowan for his aforementioned violations of Berry's constitutional rights, Parker negligently or purposefully failed to cause his deputies, including McGowan, to know and to understand the fact they did not have the power or authority to violate the constitutional rights of citizens as McGowan violated Berry's constitutional rights, as described above.

55. Parker allowed and permitted a pattern, practice, and a de facto policy to exist which caused McGowan not to understand, know and appreciate the fact that all citizens, including African-American men, are entitled to due process of law.

56. As a result of Parker failing to train his deputies, McGowan did not know and he did not appreciate the fact that he had to have evidence giving him probable cause to believe a citizen committed the crime which he intended to charge the citizen with committing before he could lawfully seize and arrest a citizen.

57. As a direct and proximate result of the aforementioned acts, omissions and the systematic flaws in Parker's training, supervision and disciplinary policy for his deputies,

McGowan erroneously and mistakenly believed he had Parker's authority, approval and permission to employ the aforementioned verbal, psychological and physical abuse of Berry when he physically seized Berry and when he falsely arrested Berry and put Berry in jail and when he charged Berry with the crime of battery on a fireman when McGowan knew, or he should have known, as any reasonable law enforcement officer would have known, that he did not have any evidence whatsoever that Berry had, in fact, committed the necessary elements of the crime of battery on a fireman.

58.   For all of the aforementioned reasons, Parker is liable to Berry for all damages which he has sustained while McGowan was acting in his official capacity as Parker's duly appointed deputy, including violations of Berry's constitutional rights.

Wherefore, Berry demands judgment against Parker for all damages to which he is entitled under the law, including his costs of this action such as expert witness and attorney's fees, pursuant to federal law and Berry demands punitive damages.

DATED:   May 29, 2015.

                                          s/Jack B. Nichols
                                          Jack B. Nichols, Esquire
                                          Florida Bar No.: 095141
                                          Jack B. Nichols, P.A.
                                          207 O'Brien Road, Suite 111
                                          Fern Park, FL 32730
                                          (407) 841-8823
                                          jacknicholslawq@live.com
                                          Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

      I hereby certify that, on March 29, 2015 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will serve a copy on Thomas W. Poulton, Esq. and Jeffrey K. Grant, Esq., DeBevoise & Poulton, P.A., Lakeview Office Park, Suite 1010, 1035 S. Semoran Blvd., Winter Park, FL 327892 and by e-mail to poulton@debevoisepoulton.com and grant@debevoisepoulton.com.

                                              s/Jack B. Nichols
                                              Jack B. Nichols